IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DR. BONNIE GERALD                                                    PLAINTIFF

V.                                    CIVIL ACTION NO. 2:12cv147-KS-MTP

UNIVERSITY OF SOUTHERN MISSISSIPPI (USM);
DR. MARTHA SAUNDERS, INDIVIDUALLY AND OFFICIALLY;
DR. ROBERT LYMAN, INDIVIDUALLY AND OFFICIALLY;
DR. KATHY YADRICK, INDIVIDUALLY AND OFFICIALLY;
DR. MIKE FORSTER, INDIVIDUALLY AND OFFICIALLY          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary

Judgment [26] and Motion to Strike Affidavit of Dr. Rocco A. Barbieri ("Motion to Strike")

[39]. Having considered the submissions of the parties, the record, and the applicable

law, the Court finds that both motions should be granted in part and denied in part.

## BACKGROUND

Plaintiff Dr. Bonnie Gerald asserts several federal and state law claims in relation

to her former employment at the University of Southern Mississippi ("USM") in

Hattiesburg, Mississippi. Defendant Dr. Martha Saunders was the President and

Defendant Dr. Robert Lyman was the Provost of USM at all times relevant to the

Complaint. Defendant Dr. Kathy Yadrick was Dr. Gerald's supervisor and is the Chair of

the Department of Nutrition and Food Systems ("NFS") at USM. Defendant Dr. Mike

Forster is the Dean of USM's College of Health, which encompasses the NFS, and is

Dr. Yadrick's supervisor.

In May of 2007, Dr. Gerald was hired as an Associate Professor of Nutrition and

Food Systems at USM. This was a tenure track appointment. The tenure track at USM

is typically composed of six annual contracts.  Prior to her employment at USM, Dr. Gerald was a tenured professor at Louisiana Tech University ("LTU").  USM gave Dr. Gerald a one-year credit toward tenure in light of her prior employment at LTU.

On October 10, 2009, during the third year of her employment, Dr. Gerald was involved in a serious motorcycle accident.  Dr. Gerald sustained multiple fractures (including, but not limited to, two broken legs, two broken ankles, a broken arm, and a broken clavicle) and spleen damage, which necessitated extensive medical treatment and hospitalization.  Dr. Gerald was unable to work for the remainder of the fall semester and missed the entire spring semester of 2010 as a result of her injuries.  Dr. Gerald taught one online class and participated in a research project in the summer of 2010.  She resumed teaching classes in person in the fall of 2010.  Dr. Gerald used a walker or cane at various times after she returned to teaching at USM.  Also, Dr. Gerald visited the hospital approximately five (5) times between August of 2010 and May of 2011 for treatment relating to the injuries she sustained in her motorcycle accident or for resulting complications.

All faculty at USM undergo annual performance evaluations.  In addition, tenure track faculty receive a "pre-tenure" review during the third year of their employment. Generally, the purpose of the pre-tenure review is to determine if a faculty member is making satisfactory progress toward tenure.  Dr. Gerald's pre-tenure review should have occurred in the spring of 2010.  However, the review was delayed until 2011 because of Dr. Gerald's motorcycle accident.  Dr. Gerald's pre-tenure review processed through the following decisionmakers:  (1) the NFS pre-tenure review committee (composed of tenured faculty members Dr. Denise Brown, Dr. Carol Connell, and Dr.

Elaine Molaison); (2) the NFS Chair, Dr. Yadrick; (3) the College Advisory Committee ("CAC") (composed of seven tenured faculty members from the College of Health); (4) the Dean of the College of Health, Dr. Forster; and (5) the Provost, Dr. Lyman.

On February 9, 2011, the members of the NFS pre-tenure review committee (the "NFS Committee") unanimously recommended against the renewal of Dr. Gerald's employment.  (*See* Doc. No. [26-10].)  The NFS Committee noted deficiencies in "minimum requirements for category 2 research dissemination"; student evaluation ratings per "the department mean of 4.33"; and Dr. Gerald's responsiveness to "issues raised by students since her appointment . . . ." (*See* Doc. No. [26-10] at pp. 1-2.)  On March 1, 2011, Dr. Yadrick recommended against the continued employment of Dr. Gerald.  (*See* Doc. No. [26-11].)  Dr. Yadrick found that Dr. Gerald did not meet "important expectations of her employment as an associate professor; her teaching performance has been a particular issue of chronic concern."  (Doc. No. [26-11] at p. 1.)  On March 21, 2011, the CAC, by a vote of 6-0 (with one recusal), concurred with the NFS Committee and Dr. Yadrick, and recommended that "Dr. Gerald not be granted the requested pre-tenure renewal contract."  (Doc. No. [26-12].)  On April 7, 2011, Dr. Forster concurred with the evaluations of the NFS Committee, Dr. Yadrick, and the CAC.  (*See* Doc. No. [26-13].)  On May 12, 2011, Dr. Lyman advised Dr. Gerald in writing that she had "received a negative endorsement from the department tenured faculty, department chair, the college advisory committee, and the Dean."  (Doc. No. [26-14].)  Dr. Lyman further provided that he agreed with the determination that Dr. Gerald was not making satisfactory progress toward tenure.  As a result, Dr. Gerald was to "be issued a terminal contract for 2011-2012."  (Doc. No. [26-14].)

-3-

On July 22, 2011, before any terminal contract was issued to Dr. Gerald, she advised Dr. Forster in writing that she was resigning effective August 19, 2011, so that she could "pursue other interests."  (Doc. No. [26-15] at p. 1.)  Also on July 22, Dr. Gerald advised Dr. Yadrick in writing that, *inter alia*, she refused to continue to work for a supervisor who views her "severe injuries as annoyances and makes tactless remarks about my physical condition in the presence of staff".  (Doc. No. [26-15] at p. 2.)

On February 9, 2012, Dr. Gerald submitted her Charge of Discrimination [26-12] to the Equal Employment Opportunity Commission ("EEOC"), alleging disability and gender discrimination.  On May 25, 2012, the EEOC issued its Dismissal and Notice of Rights [26-17].

On July 3, 2012, Dr. Gerald filed suit against the Defendants in the Circuit Court of Forrest County, Mississippi.  (*See* Compl. [26-1].)  The Complaint asserts that the Defendants intentionally discriminated against Dr. Gerald because of her disability and failed to provide reasonable accommodations in violation of the Americans with Disabilities Act ("ADA") and/or the Rehabilitation Act of 1973.  Gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended to include the Lilly Ledbetter Fair Pay Act of 2009, is alleged on the basis of a male professor, who was purportedly less qualified than Dr. Gerald, receiving a favorable pre-tenure review.  Dr. Gerald further seeks relief under Title 42 U.S.C. § 1983 for alleged violations of her rights to due process and equal protection, as well as her rights under the First Amendment.  Dr. Gerald also alleges the following state law claims:  intentional infliction of emotional distress, negligent infliction of emotional distress, breach of implied contract, constructive discharge, outrage, negligence, menace, promissory estoppel,

-4-

equitable estoppel, detrimental reliance, and breach of express contract.

On August 31, 2012, the Defendants timely removed the proceeding to this Court on the basis of federal question subject matter jurisdiction under Title 28 U.S.C. § 1331. (*See* Notice of Removal [1].)  On October 10, 2013, the Court granted in part and denied in part Defendants' Motion to Strike the Plaintiff's Designation of Dr. Rocco A. Barbieri as an Expert on the Plaintiff's Alleged Disabilities [25].  (*See* Op. & Order [33].) The Court found that Dr. Barbieri had not been properly designated as an expert witness, and thus held that "Dr. Barbieri will not be permitted to present expert testimony at trial under Federal Rule of Evidence 702."  (Op. & Order [33] at p. 12.) However, the Court found that Dr. Barbieri could testify as a fact witness "regarding his treatment of the Plaintiff as reflected in any medical record documenting the treatment." (Op. & Order [33] at pp. 12-13.)

On September 6, 2013, Defendants filed their Motion for Summary Judgment [26].  Dr. Gerald submitted an affidavit from Dr. Barbieri in support of her opposition to summary judgment.  (*See* Barbieri Aff. [34-6].)  On November 12, 2013, Defendants filed their Motion to Strike [39], arguing that Dr. Barbieri's affidavit violates the Court's October 10 Opinion and Order [33].

## **DISCUSSION**

**I.    Motion to Strike [39]**

The following portions of Dr. Barbieri's affidavit are the subject of this motion:

3.    Although I have been, for many years, a Board Certified Orthopedic Surgeon, a layman could easily see that, throughout the years 2010 through 2011, Dr. Gerald was disabled, physically impaired, and was substantially limited in regard to her ability to work, walk, stand, or engage in numerous

other major life activities to include:  caring for herself, performing manual tasks, sleeping, lifting, bending, and/or concentrating.

4.      In laymen's terms she had two broken legs, two broken ankles, a broken arm, fractures, spleen damage and a broken clavicle.  She had multiple skin grafts, infections, requiring additional hospitalization, that resulted from the foregoing. These infections contributed significantly to extensive swelling in her extremities. She needed considerable assistance and accommodations regarding walking or standing or working.  Often she needed a cane, walker, and/or wheelchair to ambulate.

5.      Clearly, she was disabled in 2010 and 2011.  Clearly, as anyone could see, she needed assistance and accommodations so she could work.

6.      Against my advice, she did her best to return to work because she needed to survive.   My office allowed her to return to work assuming, because it was an obvious need, that she would be assisted and accommodated in her work - - particularly in the teaching aspect of her profession.

(Barbieri Aff. [34-6] at pp. 1-2.)

Dr. Barbieri's statements regarding Dr. Gerald's injuries, the resulting medical treatment, and whether Dr. Gerald returned to work against his advice fall within the scope of the fact witness testimony authorized by the Court's October 10 Opinion and Order [33] and evidenced by Dr. Gerald's medical records.  Conversely, Dr. Barbieri's opinions regarding whether Dr. Gerald was disabled or physically impaired, whether she was substantially limited in her ability to engage in major life activities, and whether she needed accommodations fall within the scope of testimony prohibited by the Court's Order [33].  It appears that these opinions are not "reflected in any medical record documenting . . . [Dr. Barbieri's] treatment" of Dr. Gerald.  (Op. & Order [33] at pp. 12-13.)  Also, notwithstanding the reliability *vel non* of these opinions or whether they would assist the trier of fact, the opinions appear to be based on the "scientific, technical, or

-6-

other specialized knowledge" of a board certified orthopedic surgeon.  Fed. R. Evid. 702(a).

Dr. Gerald's central argument that Dr. Barbieri is merely offering lay witness testimony is unavailing.  Federal Rule of Evidence 701, permitting opinion testimony by lay witnesses, was amended in 2000 to exclude any testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701(c).  The advisory committee notes to the amendment explain that Rule 701 was amended to eliminate the risk of a party evading the reliability requirements of Rule 702 and the disclosure requirements of Federal Rule of Civil Procedure 26 "by simply calling an expert witness in the guise of a layperson."  Fed. R. Evid. 701 advisory committee's note.  Moreover, Dr. Gerald previously took the position that Dr. Barbieri would be called to "provide *expert testimony* regarding the fact of and extent of disability of Plaintiff while employed at USM, the impact of that disability regarding significant and substantial life activities, and the obvious needs she had regarding her need to be accommodated regarding her disabilities while employed at USM."  (Pl.'s Suppl. of Disc. [25-1] at p. 3) (emphasis added).  Dr. Gerald's present position that "[n]ot one expert opinion is contained in" Dr. Barbieri's affidavit borders on frivolity.  (Pl.'s Mem. in Supp. of Resp. to Mot. to Strike [42] at p. 2.)  Therefore, the Motion to Strike [39] is granted to the extent that the Court will not consider the following portions of Dr. Barbieri's affidavit in ruling on summary judgment:  (i) paragraph 3; (ii) the fourth sentence of paragraph 4; (iii) paragraph 5; and (iv) the second sentence of paragraph 6.  The motion is otherwise denied.

## II.     Motion for Summary Judgment [26]

A.     **Standard of Review**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact."  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Id.*  "'An issue is material if its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v.*

*Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary Judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322).

### B.    Federal Claims

The Court initially addresses Dr. Gerald's federal claims that fail as a matter of law.  Dr. Gerald alleges disability discrimination in connection with her employment in violation of Title I of the ADA, 42 U.S.C. § 12112, and/or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  The Fifth Circuit has held that the text of the Rehabilitation Act does not provide for suit against a defendant in his or her individual capacity, and that § 1983 cannot be used as an alternative method for vindicating rights granted by the Rehabilitation Act.  *See Lollar v. Baker*, 196 F.3d 603, 608-10 (5th Cir. 1999) (reasoning that Congress' enactment of a comprehensive enforcement mechanism for the protection of individuals with disabilities through 29 U.S.C. § 794(a) foreclosed resort to the general remedial provisions of 42 U.S.C. § 1983); *see also D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 456-57 (5th Cir. 2010) (following *Lollar* and holding that the plaintiff could not pursue his ADA and Rehabilitation Act claims against the defendant school district through § 1983).  The Court has been unable to identify any published Fifth Circuit opinion addressing individual liability under the ADA.  However, in a 2012 unpublished opinion, the Fifth Circuit noted that "the rights and remedies under the ADA and the RA are the same," and found that defendants could not be sued for ADA violations in their

individual capacities. *Nottingham v. Richardson*, 499 Fed. Appx. 368, 376 n.6 (5th Cir. 2012). Numerous district courts within the Fifth Circuit have also dismissed ADA claims asserted against defendants in their individual capacities given the similarities between the ADA and Rehabilitation Act. *See, e.g.*, *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 703 (E.D. La. 2013) ("[I]ndividuals are not subject to liability under Title I of the ADA."); *Pena v. Bexar County, Tex.*, 726 F. Supp. 2d 675, 689-90 (W.D. Tex. 2010) (dismissing the plaintiff's § 1983 claims against the defendants in their individual capacities for violations of the ADA); *Decker v. Dunbar*, 633 F. Supp. 2d 317, 357 (E.D. Tex. 2008) (same), *aff'd*, 358 Fed. Appx. 509 (5th Cir. 2009). Dr. Gerald's ADA and Rehabilitation Act claims against Dr. Yadrick, Dr. Forster, Dr. Lyman, and Dr. Saunders (sometimes collectively referred to as the "Individual Defendants"), in their individual capacities, will be dismissed under the weight of the preceding authorities. This ruling extends to any allegations of disability discrimination asserted against the Individual Defendants in their individual capacities under 42 U.S.C. § 1983. In addition, the Court will not undertake any separate analysis as to Dr. Gerald's ADA and Rehabilitation Act claims against the Individual Defendants in their official capacities since USM, "the real party in interest", is a party to the lawsuit. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted).

The Fifth Circuit has also held that "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir.

2002)).  Thus, Dr. Gerald's claims against the Individual Defendants under Title VII are due to be dismissed.  This ruling does not extend to Dr. Gerald's allegations of gender discrimination asserted against these Defendants in their individual capacities under 42 U.S.C. § 1983.  *See Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 549-50 (5th Cir. 1997) (holding that plaintiffs can maintain parallel Title VII and § 1983 claims because sex discrimination by a public employer violates the Fourteenth Amendment's Equal Protection Clause irrespective of Title VII).

It is also well settled that states and state agencies are not "persons" subject to suit under § 1983.  *Cheramie v. Tucker*, 493 F.2d 586, 587 (5th Cir. 1974).  This rule extends to public employees sued in their official capacities since an official capacity claim is asserted "against the official's office" and "is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (citations omitted).  USM is an agency or arm of the State of Mississippi.  *See Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1168 (¶ 12) (Miss. Ct. App. 2007); *accord Salcido v. Univ. of S. Miss.*, No. 2:11cv173, 2013 WL 2367877, at *2 (S.D. Miss. May 29, 2013); *Nichols v. Univ. of S. Miss.*, 669 F. Supp. 2d 684, 693 (S.D. Miss. 2009).  Therefore, USM is entitled to judgment as a matter of law with respect to Dr. Gerald's § 1983 claims.  The same result follows as to Dr. Gerald's demand for monetary damages under § 1983 against the Individual Defendants in their capacities as officers of USM.[1]

---

[1] A claim for prospective injunctive relief against a state official, as opposed to a claim for monetary damages, may be brought under § 1983.  *See Will*, 491 U.S. at 71 n.10 (citing *Kentucky*, 473 U.S. at 167 n.14; *Ex parte Young*, 209 U.S. 123, 159-60, 28 S. Ct. 441, 52 L. Ed. 714 (1908)).

The Court next addresses, as a preliminary matter, the Defendants' assertion that Dr. Gerald's claims under the ADA and Title VII are time-barred.[2] "A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct." *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)). Title I of the ADA incorporates by reference Title VII's administrative prerequisites for filing suit in federal court. *See* 42 U.S.C. § 12117(a); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). The 180-day period acts as a statute of limitations. *Hood*, 168 F.3d at 232 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982)). Discrete employment actions, "such as termination, failure to promote, denial of transfer, or refusal to hire", occurring more than 180 days before an EEOC charge is filed are not actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). However, under a continuing violation theory of recovery such as a hostile work environment claim, "a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (citing *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)). This is because a hostile work environment claim is comprised of multiple "acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Nonetheless, "discrete discriminatory acts are not actionable if time barred,

---

[2] The Defendants do not argue that Dr. Gerald's claims under the Rehabilitation Act are untimely.

even when they are related to acts alleged in timely filed charges." *Id.* at 113.

Dr. Gerald filed her Charge of Discrimination [26-16] with the EEOC on February 9, 2012.  Defendants thus contend that Dr. Gerald is precluded from proceeding with her Title VII and ADA claims based on any acts that occurred prior to August 13, 2011, 180 days before the charge was filed.  Specifically, Defendants assert that Dr. Gerald's Title VII and ADA claims relating to her negative pre-tenure review and USM's resulting decision not to renew her employment are time-barred since the review was completed and the employment decision was made by May 12, 2011.  Defendants further assert that Dr. Gerald's claims under the ADA for failure to provide accommodations are untimely since Dr. Gerald testified at deposition that she was refused accommodations in the fall of 2010; that she made no requests for accommodations in the spring of 2011; and, "that the purported 'chain of events' during which the Defendants allegedly refused her accommodation stretched from August 2010 to June 1, 2011."  (Defs.' Mem. Brief in Supp. of Mot. for SJ [27] at p. 7.)

The Court finds that Dr. Gerald's Title VII and ADA claims relating to her negative pre-tenure review and the determination not to renew her employment are untimely.  Dr. Gerald was clearly advised of these discrete acts by Dr. Lyman in his letter of May 12, 2011.  (*See* Doc. No. [26-14].)  Although it appears that Dr. Gerald continued to work at USM until August 19, 2011, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Del. State Coll. v. Ricks*, 449 U.S. 250, 257, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980) (citation omitted).  In *Ricks*, the Supreme Court considered whether a college professor timely complained of national origin discrimination under Title VII in connection with the denial

of academic tenure.  *Id.* at 252.  On March 13, 1974, the College Board of Trustees

voted to deny tenure to Ricks.  *Id.*  On June 26, 1974, the Trustees advised Ricks that

he would be offered a terminal contract expiring on June 30, 1975.  *Id.* at 253.  Ricks

contended that his time to file a complaint with the EEOC started to run when his

contract expired in June of 1975.  *Id.* at 259.  The Supreme Court disagreed and

concluded "that the limitations periods commenced to run when the tenure decision was

made and Ricks was notified" in June of 1974.  *Id.* at 259, 262.  The Court reasoned

that Ricks' termination of employment was the delayed, but inevitable, result of the

denial of tenure, and "that [t]he proper focus is upon the time of the *discriminatory acts*,

not upon the time at which the *consequences* of the acts became most painful."  *Id.* at

257-58 (citations and internal quotation marks omitted); *cf. Phillips v. Leggett & Platt,*

*Inc.*, 658 F.3d 452, 456 (5th Cir. 2011) ("An employment event that is merely an effect

of a prior employment decision does not constitute a separate and distinct act that

begins the calendar anew for bringing an ADEA claim.") (citation omitted).  Similar to

Ricks, Dr. Gerald's continued employment beyond the date she was advised that she

would "be issued a terminal contract for 2011-2012"[3] fails to prolong her time to

complain to the EEOC of discrimination.

The Court also determines that Dr. Gerald waited too late to file her EEOC

charge in connection with the Defendants' alleged failure to afford her reasonable

accommodations under the ADA.  The Fifth Circuit has held that the failure to

accommodate a disability constitutes a discrete act that must be timely brought before

---

[3] (Doc. No. [26-14].)

the EEOC in order for a claimant to obtain relief under the ADA.  *See Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. Appx. 387, 391 (5th Cir. 2005).[4]  Dr. Gerald alleges that she was denied the following requested accommodations at USM: (i) teaching online classes; (ii) a graduate assistant for twenty (20) hours per week; (iii) rescheduling the laboratory portion of a class; (iv) assistance with transferring and organizing her files and equipment when she was moved to another office; and, (v) an extension cord for her new office.  (*See* Gerald Dep. [26-2] 154:8-157:19, 168:2-14, 171:11-175:14.)  Viewing the relevant summary judgment evidence in Dr. Gerald's favor, which largely consists of her deposition testimony, the Court finds no denial of any request for accommodation occurring within the 180-day EEOC charging period, beginning on August 13, 2011.  All of the above-listed requests for accommodations were purportedly made and denied either in the summer or fall of 2010.  (*See* Gerald Dep. [26-2] 155:4-22, 156:23-157:8, 167:3-7, 168:2-14, 171:20-175:14.)  Dr. Gerald could not recall whether she made any requests for accommodation in the spring of 2011.  (*See* Gerald Dep. [26-2] 199:4-200:2.)  However, she felt at that time that "the environment was contaminated" and that "any request I made was not going to be granted."  (Gerald Dep.

---

[4] Although *Henson* is unpublished, it is still persuasive. *See Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 893 (5th Cir.2013) (citing an "unpublished but persuasive" Fifth Circuit opinion).  Further, numerous other federal authorities are in accord.  *See, e.g., Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) ("[T]he denial of a disabled employee's request for accommodation starts the clock running on the day it occurs."); *Lee v. Dep't of Children & Families*, 939 F. Supp. 2d 160, 170 (D. Conn. 2013) (providing that denials of requests for accommodation constitute discrete acts not subject to the continuing violation doctrine); *Patton v. AFG Indus., Inc.*, 92 F. Supp. 2d 1200, 1206 (D. Kan. 2000) (holding that the plaintiff knew or should have known that a violation of the ADA occurred when his request for accommodation was denied).

[26-2] 198:1-11.)  Dr. Gerald also testified that she communicated her concerns regarding her requests for accommodation not being met to Dr. Rebecca Woodrick, USM's Director of the Office of Affirmative Action and Equal Employment Opportunity, and Dr. Forster in or about January of 2011.  (*See* Gerald Dep. [26-2] 203:9-205:18.)  Pursuant to her sworn testimony, Dr. Gerald had sufficient information for the statute of limitations to accrue on her ADA failure to accommodate claims prior to the cutoff date of August 13, 2011.  *Cf. Windhauser v. Bd. of Supervisors for La. State Univ. & Agric. & Mech. Coll.*, 360 Fed. Appx. 562, 566 (5th Cir. 2010) (finding a university professor's failure to accommodate allegations to be time-barred, and noting that the alleged discriminatory acts should have put the professor on notice that a cause of action had accrued); *Stewart v. District of Columbia*, No. Civ.A. 04-1444, 2006 WL 626921, at *3 (D.D.C. Mar. 12, 2006) ("[I]t is well-settled that [t]he statute of limitations for ADA claims accrues at the time when the plaintiff knew or had reason to know of the injury serving as the basis for his claim.") (citation and internal quotation marks omitted).

Dr. Gerald appears to invoke the continuing violation doctrine in response to the Defendants' time-based requests for dismissal.  "[T]he actual facts show a continuing stream of misconduct on the part of defendants that reflects a failure to accommodate Dr. Gerald regarding her disabilities, denigrating her, demeaning her, and intentionally make [sic] her workplace hostile and intolerable."  (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 3.)  This argument fails to alter the preceding determinations.  First, Dr. Gerald's negative pre-tenure review, USM's decision not to renew her employment beyond 2012, and the Defendants' alleged failure to accommodate her disabilities constitute "discrete actions . . . not entitled to the shelter of the continuing

-16-

violation doctrine." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (citing *Huckabay v. Moore*, 142 F.3d 233, 238-39 (5th Cir. 1998)); *see also Pegram*, 361 F.3d at 280 (finding the continuing violation doctrine inapplicable to alleged discrete acts of racial discrimination).  Second, even assuming *arguendo* the existence of a series of related discriminatory acts, there is no evidence of at least one act of discrimination occurring on or after **August 13, 2011**.  *See Pegram*, 361 F.3d at 279-80 ("*Morgan* makes clear that claims based . . . on hostile environment are only timely where at least one act occurred during the limitations period.").  Dr. Gerald testified at deposition that the "chain of events" pertaining to her requests for accommodations stretched "from August of 2010 through **June 1 of 2011**."  (Gerald Dep. [26-2] 257:6-12) (emphasis added).  E-mails between Dr. Yadrick and Dr. Connell (and Dr. Forster) referenced by Dr. Gerald as evidence of an intolerable workplace are dated **August 16, 2010**.  (*See* Doc. Nos. [34-14], [34-15].)  Further, it is undisputed that Dr. Gerald's **July 22, 2011** notice of resignation to Dr. Yadrick stated that she refused to continue to work for a supervisor who viewed her "severe injuries as annoyances and makes tactless remarks about my physical condition in the presence of staff".  (Doc. No. [26-15] at p. 2.)  The mere continuation of Dr. Gerald's employment from July 22 to August 19, 2011, failed to restart the period of limitations for any prior alleged acts of discrimination.  *See Ricks*, 449 U.S. at 257-58; *Phillips*, 658 F.3d at 456.

The Court next considers whether the Lilly Ledbetter Fair Pay Act of 2009 ("FPA"), Pub. L. No. 111-2, 123 Stat. 5, saves any of Dr. Gerald's Title VII claims from dismissal.  The FPA added the following provision to Title VII:

-17-

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).  Congress passed the FPA in response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed. 2d 982 (2007).  In *Ledbetter*, the Court found the plaintiff's discrimination in pay claims untimely and rejected her argument that each paycheck triggered a new EEOC charging period.  *See* 550 U.S. at 628, 632.  The Court held that the time for filing an EEOC charge begins when a pay-setting decision takes place since such a "decision is a discrete act that occurs at a particular point in time . . . ." *Id.* at 621.  In passing the FPA, Congress specifically provided that *Ledbetter* undermines statutory protections against discrimination in compensation "by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation or other practices, contrary to the intent of Congress." Pub. L. 111-2, § 2(1), 123 Stat. 5.  Under "the FPA, each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment action that commences the administrative statute of limitations."  *Noel v. Boeing Co.*, 622 F.3d 266, 271 (3d Cir. 2010).

Several courts have found the FPA inapplicable to discrete employment actions not involving alleged discrimination in compensation.  *See, e.g.*, *Almond v. Unified Sch.*

*Dist. # 501*, 665 F.3d 1174, 1180 (10th Cir. 2011) ("[T]he Act applies only to claims alleging 'discrimination in compensation'–or, put another way, claims of unequal pay for equal work."); *Noel*, 622 F.3d at 273 (concluding that failure to promote claims fall outside the scope of the FPA); *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 Fed. Appx. 346, 350 n.2 (5th Cir. 2010) (holding that the FPA did not apply to the discrete acts at issue in the case, including a reprimand and the denial of overtime work); *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 794-95 (S.D. Tex. 2011) (same as *Noel*); *Leach v. Baylor Coll. of Med.*, No. H-07-0921, 2009 WL 385450, at *17 (S.D. Tex. Feb. 17, 2009) (providing that the FPA only pertains to discriminatory compensation actions, and that the rules set forth by the Supreme Court in *Morgan* and *Ricks* still apply to other discrete acts).  Dr. Gerald's allegation that she received a negative pre-tenure review and was subsequently dismissed while a less-qualified male professor, Dr. Keith Rushing, received a favorable pre-tenure review does not constitute a claim "of unequal pay for equal work."  *Almond*, 665 F.3d at 1180.  Further, Dr. Gerald's negative review and dismissal were "easily identifiable, discrete" acts. *Blasingame v. Eli Lilly & Co.*, No. H-11-4522, 2013 WL 5707324, at *6 (S.D. Tex. Oct. 18, 2013) (determining that the plaintiff's failure to promote claim was time-barred and not saved by the FPA).  Therefore, the preceding authorities lead the Court to conclude that Dr. Gerald's Title VII claims based on the varying outcomes of Dr. Rushing and her pre-tenure reviews are untimely and time-barred notwithstanding the FPA.

Defendants concede that Dr. Gerald "generally alleged a 'discriminatory compensation decision' in her Complaint . . . ."  (Defs.' Mem. Brief in Supp. of Mot. for SJ [27] at pp. 18-19 n.6.)  However, the Defendants argue that the FPA has no

application here since Dr. Gerald failed to plead any specific facts in support of the claim or produce any evidence of a discriminatory compensation decision.  Dr. Gerald argues that discovery "solidified" this claim and produced evidence of "the pay disparity and disparate treatment regarding pay" between Dr. Rushing and herself.  (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 12.)  Dr. Rushing testified at deposition that he was paid approximately $64,000 on an annual basis for the four years he was an NFS faculty member.  (*See* Rushing Dep. [26-25] 9:14-10:8.)  Dr. Gerald was paid $55,000 per year.  (*See* Gerald Dep. [26-2] 27:13-20; Employment Contracts [26-7].)  Viewing these facts and the resulting inferences in Dr. Gerald's favor (including the inference that Dr. Gerald received at least one paycheck after August 13, 2011, since her last day of employment was August 19), the Court finds that the FPA precludes the dismissal of Dr. Gerald's discrimination in pay claim based on untimeliness.  *See* 42 U.S.C. § 2000e-5(e)(3)(A) ("[A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, . . . each time wages, benefits, or other compensation is paid . . . .").

In summary, the following of Dr. Gerald's claims will be dismissed for the foregoing reasons:  (i) ADA and Rehabilitation Act claims against the Individual Defendants in their individual capacities; (ii) Title VII claims against the Individual Defendants; (iii) 42 U.S.C. § 1983 claims against USM; (iv) 42 U.S.C. § 1983 claims for monetary damages against the Individual Defendants in their capacities as officers of USM; (v) all ADA claims; and (vi) all Title VII claims arising out of Dr. Gerald's pre-tenure review and USM's decision not to renew her employment.

### 1.    Disability Discrimination Under the Rehabilitation Act

The Rehabilitation Act states in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  The operations of "a college, university, or other postsecondary institution" are included under the Rehabilitation Act's definition of a "program or activity".  29 U.S.C. § 794(b)(2)(A).  Through incorporation by reference of the employment discrimination standards of Title I of the ADA,[5] the Rehabilitation Act also prohibits discrimination in the form of an employer "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."  42 U.S.C. § 12112(b)(5)(A).  Dr. Gerald's Complaint implicates the preceding provisions by alleging intentional discrimination (i.e., disparate treatment) because of her disability, and the failure to provide reasonable accommodations.  (*See* Compl. [26-1] at ¶¶ 41-42.)

In the absence of any direct evidence of discriminatory intent, the Court applies "the familiar burden-shifting formula from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to" Dr. Gerald's disparate treatment claim under the Rehabilitation Act.  *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 Fed. Appx. 364, 368 (5th Cir. 2012).  "If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to 'articulate some legitimate nondiscriminatory reason' for its actions."  *Id.* (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).  If the defendant proffers such a reason, "the burden of

---

[5] *See* 29 U.S.C. § 794(d).

production shifts back to the plaintiff to show by a preponderance of the evidence that the nondiscriminatory justification was mere pretext for discrimination." *Amsel v. Tex. Water Dev. Bd.*, 464 Fed. Appx. 395, 400 n.4 (5th Cir. 2012) (citation omitted).

A failure to accommodate claim is separate and distinct from a disparate treatment cause of action. *Mzyk v. N. E. Indep. Sch. Dist.*, 397 Fed. Appx. 13, 16 n.3 (5th Cir. 2010) (listing separate elements). At least one district court within the Fifth Circuit has found the *McDonnell Douglas* framework inapplicable to a failure to accommodate claim. *Keel v. Wal-Mart Stores, Inc.*, No. 1:11cv248, 2012 WL 3263575, at *13 (E.D. Tex. July 17, 2012), *adopted by* 2012 WL 3262882 (E.D. Tex. Aug. 9, 2012), *aff'd*, 2013 WL 5615712 (5th Cir. Oct. 15, 2013).

Jurisprudence addressing disability discrimination under the ADA is generally applicable to Rehabilitation Act litigation given the similarities between the two statutes. *See Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (citation omitted). However, "[t]he causation requirements for the ADA and the RA differ in that the ADA proscribes discrimination by reason of disability, whereas the RA premises liability only on discrimination that was *solely* by reason of a person's disability." *O'Neil v. Tex. Dep't of Criminal Justice*, 804 F. Supp. 2d 532, 538 (N.D. Tex. 2011) (citing *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500 (5th Cir. 2002); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005)).

### a.    Disparate Treatment

To establish a prima facie case of discrimination under the Rehabilitation Act, Dr. Gerald must show that (1) "she has a disability; (2) she is an individual qualified for the job in question; (3) she worked for a program or activity receiving Federal financial

assistance; and (4) an adverse employment decision was made solely because of this disability." *McKay v. Johanns*, 265 Fed. Appx. 267, 268 (5th Cir. 2008) (citations omitted). Defendants chiefly attack Dr. Gerald's ability to meet the fourth required element on this claim. An "adverse employment action" is limited "to an ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating." *Smith v. Potter*, 629 F. Supp. 2d 644, 651 (S.D. Miss. 2009) (citation omitted). Defendants assert that the only ultimate employment decision alleged by Dr. Gerald "is her negative third-year pre-tenure review resulting in USM's decision to offer her a terminal contract for the 2011-2012 academic year." (Defs.' Mem. Brief in Supp. of Mot. for SJ [27] at p. 10.) Defendants argue that there is no evidence of this decision being made "solely" on the basis of any alleged disability, and that the evidence shows Dr. Gerald received a negative pre-tenure review because of "her chronic, subpar teaching issues and . . . failure to meet the department's and USM's expectations." (Defs.' Mem. Brief in Supp. of Mot. for SJ [27] at pp. 10-11.) Defendants also note that Dr. Gerald's allegations of gender discrimination in relation to her pre-tenure review and resulting dismissal preclude her from showing an adverse employment decision based solely on a disability.

The Court need not delve into the merits of Dr. Gerald's pre-tenure review in order to issue a summary judgment ruling on this claim. Dr. Gerald's Charge of Discrimination [26-16] and Complaint [26-1] clearly link the subject employment decision to her gender. "I submit I have also been the victim of sex discrimination in that a male comparator, Dr. Keith Rushing received a favorable Third Year Review, even though his credentials were inferior and certainly not superior to mine." (Charge of Discrimination

[26-16 at ECF p. 7].)  "Defendants have intentionally discriminated against Plaintiff because of her sex."  (Compl. [26-1] at ¶ 48.)  "Plaintiff has been victimized in that a male comparator, with clearly lesser qualifications and credentials than Plaintiff has been allowed to retain his tenure track position while Plaintiff has been dismissed."  (Compl. [26-1] at ¶ 54.)  The result of these allegations is that Dr. Gerald's "*prima facie* case . . . fails because, under the Rehabilitation Act, [s]he must show that [s]he was subject to discrimination *solely* because of a disability."  *Whitaker v. Tenn. Valley Auth. Bd. of Dirs.*, No. 3:08-1225, 2010 WL 1493899, at *5 (M.D. Tenn. Apr. 14, 2010) (granting summary judgment where the plaintiff alleged discrimination either because of his age or purported disability); *see also Alfano v. Bridgeport Airport Servs., Inc.*, No. 3:04cv1406, 2006 WL 1933275, at *3-4 (D. Conn. July 12, 2006) (dismissing the plaintiff's Rehabilitation Act cause of action since he claimed that his termination was the result of his disability *and* his refusal to engage in a discriminatory hiring practice).

Dr. Gerald's recent description of her gender discrimination claims as "an *alternative* civil action" changes nothing.  (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 12.)  The Court is unable to locate the term "alternative" or any synonym thereof in the Complaint's assertion of Dr. Gerald's Title VII causes of action.  (Compl. [26-1] at ¶¶ 47-54.)  Further, the Complaint alleges "discriminatory treatment of Plaintiff . . . based upon gender, sex, *and* disability", as opposed to gender, sex, *or* disability.  (Compl. [26-1] at ¶ 4) (emphasis added).  Dr. Gerald's disparate treatment claim under the Rehabilitation Act does not proceed past the first step of the *McDonnell Douglas* analysis, and will be dismissed.

### b.    Failure to Accommodate

Dr. Gerald must prove the following elements in order to recover on her failure to accommodate claim:  (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by USM; and (3) USM failed to make reasonable accommodations for the known limitations.  *See Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).  Unless "the disability, resulting limitations, and necessary reasonable accommodations" are open and obvious, the employee bears the initial burden of requesting an accommodation from her employer.  *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (citations omitted).  "'When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation.'"  *Id.* (quoting *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)).  This process requires good faith on the part of the employer.  *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (citations omitted).  The different causation standards of the ADA and Rehabilitation Act are immaterial on a failure to accommodate claim.  *See Bennett-Nelson*, 431 F.3d at 454-55.  Both Acts require public entities to make reasonable accommodations for individuals with disabilities and where "a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant."  *Id.*

Defendants do not appear to contest Dr. Gerald's ability to show that she was qualified for employment at USM for purposes of summary judgment on this claim.[6]

---

[6] A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

-25-

Instead, Defendants contend that insufficient proof exists of Dr. Gerald's disability and requests for accommodation. The Court finds that there are sufficient facts in dispute on these issues for Dr. Gerald's failure to accommodate claim to proceed past the summary judgment stage.

"Disability" with respect to an individual means: "(i) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) [a] record of such an impairment; or (iii) [b]eing regarded as having such an impairment . . . ." 29 C.F.R. § 1630.2(g). Major life activities include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working . . . ." 29 C.F.R. § 1630.2(i)(1)(i).

There are several facts in evidence that support the inference that Dr. Gerald suffered from a disability upon her return to work at USM in 2010. Dr. Yadrick testified that Dr. Gerald used a walker or cane at times. (*See* Yadrick Dep. [26-3] 61:4-16.) Dr. Yadrick also encouraged Dr. Gerald to obtain a handicap tag so she could "park closer to the building" in light of her use of a walker. (Yadrick Dep. [26-3] 82:25-84:5.) Dr. Yadrick was aware that on at least one occasion at work, Dr. Gerald used a port and tubes for an IV drip. (*See* Yadrick Dep. [26-3] 98:24-99:14.) Dr. Forster also testified that Dr. Gerald needed a walker or cane to ambulate. (*See* Forster Dep. [26-4] 30:19-31:3.) Dr. Forster perceived Dr. Gerald as physically impaired, observed her ambulating at a very slow rate while she appeared to be in tremendous pain and distress, and agreed that she was substantially limited in her ability to walk. (*See*

-26-

Forster Dep. [26-4] 39:18-40:17, 54:4-19.)   Dr. Rushing noticed that Dr. Gerald had significant difficulty walking and used a walker or cane.  (Rushing Dep. [26-25] 6:9-17, 9:1-8.)  Dr. Gerald's physician, Dr. Barbieri, avers that she often "needed a cane, walker, and/or wheelchair to ambulate."  (Barbieri Aff. [34-6] at ¶ 4.)  Finally, Dr. Gerald testified of several limitations associated with her injuries, including, but not limited to, limitations in her ability to walk, stand for long periods of time, lift, and use her left arm. (*See* Gerald Dep. [26-2] 257:24-258:19.)

Defendants largely ignore the foregoing circumstances and focus on a Certificate to Return to Work from Dr. Barbieri's medical clinic, advising that Dr. Gerald "is able to return to work" without restrictions on August 17, 2010.  (Doc. No. [26-19] at p. 2.)  The Certificate does tend to weigh against some of the preceding record evidence, and militate against a determination that Dr. Gerald suffered from a disability on or after August 17, 2010.  However, the Court is not permitted to weigh evidence at this stage of the proceedings.  *See Chevron Phillips Chem. Co.*, 570 F.3d at 612 n.3 (providing that a district court cannot weigh evidence or make credibility determinations when deciding a motion for summary judgment) (citation omitted).  Further, the existence of conflicting evidence usually necessitates the denial of summary judgment.  *See Nowlin v. Resolution Trust Crop.*, 33 F.3d 498, 508 (5th Cir. 1994).

As noted above, Dr. Gerald testified that she was denied the following requested accommodations at USM:  (i) teaching online classes; (ii) a graduate assistant for twenty (20) hours per week; (iii) rescheduling the laboratory portion of a class; (iv) assistance with transferring and organizing her files and equipment when she was moved to another office; and, (v) an extension cord for her new office.  (*See* Gerald

Dep. [26-2] 154:8-157:19, 168:2-14, 171:11-175:14.)  Dr. Yadrick, Dr. Forster, and Dr. Woodrick deny having any knowledge of Dr. Gerald ever requesting any accommodations.  (*See* Yadrick Dep. [26-3] 176:13-180:7; Forster Dep. [26-4] 53:9-18; Woodrick Aff. [26-21] at ¶¶ 3-5.)  The conflict between the testimonies of Dr. Gerald and the USM representatives on this issue also precludes a grant of summary judgment. *See Ill. Cent. R.R. Co. v. Harried*, 681 F. Supp. 2d 772, 775 (S.D. Miss. 2009) ("[A] genuine issue of material fact is obviously present where one party testifies to one account of the matter in interest and the other party swears otherwise.") (citation omitted).

Defendants' argument that Dr. Gerald did not make any requests for accommodation in writing and that she has no documentary evidence of any request is without effect.  The Defendants fail to cite, and the Court is unaware of any authority providing that a request for accommodation must be in writing to be effective.  Dr. Gerald's deposition testimony sufficiently raises a genuine issue of material fact as to whether she requested accommodations in her employment at USM.

The Defendants dispute that Dr. Gerald requested any accommodations, and thus, it is undisputed that she received no accommodations after returning to work following her motorcycle accident.  (*See* Yadrick Dep. [26-3] 102:20-103:2.)  If the jury ultimately determines that Dr. Gerald is a qualified individual that requested reasonable accommodations for a disability, it thus follows that liability will attach.  The Court finds any consideration of "pretext" or whether USM had a "legitimate, non-discriminatory" reason for not providing accommodations via *McDonnell Douglas* to be "unnecessary" and unworkable under these circumstances.  *Keel*, 2012 WL 3263575, at *7, 13.

-28-

### 2.      Discrimination in Pay Under Title VII

Title VII provides in pertinent part that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation . . . because of such individual's . . . sex". 42 U.S.C. § 2000e-2(a)(1).  Dr. Gerald must show "(1) that she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility" in order to establish a prima facie case of wage discrimination.  *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984) (citations omitted).  Dr. Gerald's wage discrimination claim focuses on her pay versus Dr. Keith Rushing's pay.  The Defendants argue that Dr. Gerald has failed to "produce[] any evidence of a discriminatory compensation decision."  (Defs.' Mem. Brief in Supp. of Mot. for SJ [27] at pp. 18-19 n.6.)

Dr. Gerald is a female, whereas Dr. Rushing is a male.  Dr. Gerald was a non-tenured NFS faculty member from 2007 to 2011.  Dr. Rushing was a non-tenured NFS faculty member from 2006 to 2010.  (*See* Rushing Dep. [26-25] 4:17-6:1.)  Dr. Rushing testified at deposition that he was paid approximately $64,000 on an annual basis by USM.  (*See* Rushing Dep. [26-25] 9:14-10:8.)  Dr. Gerald was paid $55,000 per year. (*See* Gerald Dep. [26-2] 27:13-20; Employment Contracts [26-7].)  There is sufficient evidence for Dr. Gerald to make out a prima facie case of wage discrimination.

The Court discerns no other argument from the Defendants in opposition to this cause of action.  Therefore, Dr. Gerald's discrimination in pay claim against USM will also proceed to trial.

### 3.      Claims Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 does not provide a general remedy for state law torts or

allow access to federal courts for all individuals suffering injuries at the hands of state actors. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). The statute "affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (quoting 42 U.S.C. § 1983). To state a cognizable § 1983 claim, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Doe ex rel. Magee v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)). A § 1983 complainant must set forth specific facts showing a constitutional violation, as opposed to conclosury or speculative allegations of wrongdoing. *See, e.g.*, *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Angel v. City of Fairfield, Tex.*, 793 F.2d 737, 739 (5th Cir. 1986). In addition, the complainant must show "that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (citation omitted).

A supervisory official "cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007) (citation omitted). Supervisory officials may be held accountable under § 1983 only if they affirmatively participate in the acts causing the constitutional violation, or implement unconstitutional policies that result in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (citing *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir.

2008)).

Individual defendants, but not governmental entities, may rely on the defense of qualified immunity. *Gates*, 537 F.3d at 436. "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "'Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). In order to overcome the defense of qualified immunity, the plaintiff must show: "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)), *cert. denied*, 133 S. Ct. 840 (2013). The defense alters the summary judgment burden of proof by requiring the plaintiff to evidence a genuine issue of material fact. *See Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir. 2013) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). The Individual Defendants have asserted the defense of qualified immunity in this case.

Only Dr. Gerald's § 1983 claims against the Individual Defendants in their individual capacities are considered in this part of the Court's opinion. Dr. Gerald's § 1983 claims against USM and request for monetary damages against the Individual Defendants in their official capacities fail as a matter of law. *See* Part II-B, *supra*.

### a.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Discrimination on the basis of sex violates the Equal Protection Clause.  *See Southard*, 114 F.3d at 550.  Dr. Gerald's equal protection claims are based on the allegations of gender discrimination discussed in the previous sections of this opinion.  Restated, the allegations are:  (1) unequal pay between Dr. Gerald and Dr. Rushing; and (2) disparate treatment between Dr. Gerald and Dr. Rushing in the context of their third-year pre-tenure reviews.

### (1)      Unequal Pay

As discussed above, there is evidence that Dr. Gerald and Dr. Rushing received different pay for similar work.  However, Dr. Gerald has failed to present any evidence showing that either Dr. Yadrick, Dr. Forster, Dr. Lyman, or Dr. Saunders was responsible for setting her salary and the salary of Dr. Rushing.  The absence of proof establishing a "causal connection" between the subject pay disparity and the actions of any Individual Defendant, or the "personal involvement" of any Individual Defendant in wage setting, necessitates the entry of summary judgment in favor of the Individual Defendants on Dr. Gerald's unequal pay claim.  *Mitchell v. City of Jackson, Miss.*, 481 F. Supp. 2d 586, 591-92 (S.D. Miss. 2006) (granting summary judgment in favor of the defendants as to individual capacity claims under § 1983), *aff'd*, 223 Fed. Appx. 411 (5th Cir. 2007).

### (2)      Disparate Treatment

There is evidence that each of the Individual Defendants, other than Dr.

Saunders, was involved in Dr. Gerald's pre-tenure review and the resulting determination not to renew her employment.  (*See* Doc. Nos. [26-11], [26-13], [26-14].) Thus, the Court will consider the merits of this claim.  Employment discrimination claims brought under § 1983 "are analyzed under the evidentiary framework applicable to claims arising under Title VII . . . ."  *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) (citations omitted).[7]  The Fifth Circuit employs the following modified *McDonnell Douglas* approach to Title VII claims dependant upon the existence of circumstantial evidence:

> [T]he plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

*Moore v. Solar Group*, 311 Fed. Appx. 722, 723 (5th Cir. 2009) (citing *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411-12 (5th Cir. 2007)).

### i)  Prima Facie Case

A claimant is required to show the following in order to make out a prima facie case of discrimination under Title VII:  (1) that she is within the protected class; (2) that she is qualified for the position; (3) that she suffered an adverse employment decision; and (4) in the case of disparate treatment, that she was treated less favorably than a similarly situated employee.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245

---

[7] Title VII's administrative exhaustion requirement is inapplicable to a § 1983 cause of action.  *See Webb v. Bd. of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 241, 105 S. Ct. 1923, 85 L. Ed. 2d 233 (1985) (citation omitted).

F.3d 507, 512-13 (5th Cir. 2001) (citations omitted).  "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous."  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citation and internal quotation marks omitted).  Only the fourth element is at issue between the parties.

A claimant who proffers a fellow employee as a comparator must demonstrate that the subject employment actions "'were taken under nearly identical circumstances.'" *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 895 (5th Cir. 2012) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Id.*  Conversely, "[e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."  *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)).  The Fifth Circuit does not "interpret 'nearly identical' as synonymous with 'identical.'"  *Id.* at 260.  Such a requirement would be essentially insurmountable since only in the rarest of instances are the situations of two employees totally identical.  *Id.*

The Defendants argue that Dr. Gerald's pre-tenure review had nothing to do with Dr. Rushing's pre-tenure review based on numerous circumstances.  Dr. Rushing's review took place in 2009, whereas Dr. Gerald's review occurred in 2011.  Dr. Rushing

-34-

resigned from his employment as a professor in the NFS in the summer of 2010, prior to Dr. Gerald's review in 2011. The members of the NFS Committee that participated in Dr. Rushing's review were totally different from the members of the NFS Committee involved in Dr. Gerald's review. The CAC that performed Dr. Gerald's review had four (4) members on it that were not on the CAC that performed Dr. Rushing's review. Dr. Forster testified at deposition that no comparison was made between Dr. Gerald and Dr. Rushing with respect to their individual pre-tenure reviews. (*See* Forster Dep. [26-4] 118:8-11.)

Dr. Gerald argues that whether or not she was compared to Dr. Rushing is irrelevant since they were both to be judged by the same criteria/standards in their respective pre-tenure reviews. "If both Dr. Rushing and Dr. Gerald are compared to the same standard, both should have been retained -- not just one." (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 11.) Dr. Gerald cites to Dr. Forster's testimony that the standards for passing the third-year pre-tenure review were the same for Dr. Rushing and Dr. Gerald in support of this argument. (*See* Forster Dep. [26-4] 118:20-23.)

The Court finds that whether or not Dr. Gerald and Dr. Rushing were similarly situated for purposes of comparing the varying outcomes of their respective pre-tenure reviews is a close call. The passage of nearly two (2) years between the reviews weighs in favor of the Defendants. *See Lee*, 574 F.3d at 259 (addressing remoteness in time between employment actions). So does the fact that numerous different individuals were involved in the two reviews. C*f. id.* at 262 (finding employees similarly situated where the decisionmaker on rehiring the employees was the same person). On

-35-

the other hand, the fact that the same standards were to be applied to both Dr. Gerald and Dr. Rushing for their respective reviews tends to negate the relevancy of the aforementioned passage of time and involvement of different CAC and NFS Committee members.  Also weighing in favor of Dr. Gerald on this issue is the involvement of both Dr. Yadrick (the NFS Chair) and Dr. Forster (the Dean of the College of Health) in the subject pre-tenure reviews.[8]  Since the Court must resolve all reasonable inferences in Dr. Gerald's favor at this stage of the litigation, the Court concludes that she has met the "not [so] onerous" burden of establishing the only disputed element of her prima facie case.  *Reed*, 701 F.3d at 439.

### ii)  Legitimate, Nondiscriminatory Reason

The defendant's reason for the adverse employment action need not be persuasive or credible.  *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002).  Instead, the defendant's burden is to produce "evidence, which, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'"  *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Hicks*, 509 U.S. at 509).  The Defendants assert that Dr. Gerald received a negative pre-tenure review and was denied employment beyond 2012

---

[8] The involvement of Dr. Yadrick and Dr. Forster in Dr. Gerald's review is discussed in the "BACKGROUND" section of this opinion and detailed in the record.  (*See* Doc. Nos. [26-11], [26-13].)  The March 10, 2009 NFS Committee report pertaining to Dr. Rushing's review states in pertinent part:  "The 2008 Tenure and Promotion Committee for the . . . [NFS] was established by Dr. Mike Forster . . . in consultation with the Chair of the Department [Dr. Yadrick]. . . .  Dr. Rushing has demonstrated positive progress in his teaching as indicated by his favorable reviews by the department chair."  (Doc. No. [38-1] at p. 1.)

because of "her chronic, subpar teaching issues and her failure to meet the [NFS] department's and USM's expectations."  (Defs.' Mem. Brief in Supp. of Mot. for SJ [27] at pp. 10-11.)  Segments of the summary judgment record, taken as true, support this assertion.  (*See* Yadrick Dep. [26-3] 151:18-22, 158:22-159:6; Forster Dep. [26-4] 100:9-14; Doc. No. [26-10]; Doc. No. [26-11]; Doc. No. [26-12].)  Thus, the Court determines that the Defendants have articulated a legitimate, nondiscriminatory reason for the subject employment action.  *Cf. Maestas v. Apple, Inc.*, 2013 WL 5385478, at *5 (5th Cir. Sept. 27, 2013) (holding that the plaintiff's "work performance issues" constituted a legitimate, nondiscriminatory reason for his termination); *Ivy v. Oxford Mun. Separate Sch. Dist.*, 799 F. Supp. 2d 697, 701 (N.D. Miss. 2011) (finding that the defendant met its burden of production in asserting that the plaintiff failed to perform her job duties satisfactorily according to her supervisors); *Escobar v. Univ. of N. Tex.*, 562 F. Supp. 2d 804, 811 (E.D. Tex. 2007) ("The University offered legitimate, nondiscriminatory reasons for terminating Dr. Escobar, which the record reflects:  her poor teaching evaluations and her poor publication record and further, her failure to respond to admonitions about both.").

### iii) Pretext - Motivating Factor

The Plaintiff is now afforded a full and fair opportunity to show that the defendant's proffered explanation is not true, i.e., that it is a pretext for discrimination. *Price*, 283 F.3d at 720.  Pretext may be exposed "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation and internal quotation marks omitted).  A claimant's prima facie case, combined with

sufficient proof that the employer's proffered justification is false, may permit the trier of fact to determine that the employment decision was motivated by discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, there will also be cases where no reasonable jury could conclude that the employment action was discriminatory in nature, notwithstanding the plaintiff's showing of a prima facie case and sufficient evidence to negate the defendant's justification. *Id.* "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Id.* at 146-47 (quoting *Hicks*, 509 U.S. at 524).

A plaintiff may also avoid summary judgment on a Title VII disparate treatment claim by presenting sufficient evidence for a reasonable jury to conclude that gender was a motivating factor for her termination. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (citations omitted). The plaintiff may rely on direct or circumstantial evidence for this mixed-motive showing. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003).

The Court first addresses Dr. Gerald's miscellaneous argument "that in ruling on a summary judgment motion it is not appropriate for the district court to determine whether subjective criteria are bona fide." (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 10) (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001); *Lindsey v. Prive Corp.*, 987 F.2d 324 (5th Cir. 1993)). Neither *Medina* nor *Lindsey* precludes a grant of summary judgment in this case. Both opinions hold that it is

improper to grant summary judgment at the prima facie case stage of the *McDonnell Douglas* analysis when an employment decision is wholly based on subjective criteria. *See Medina*, 238 F.3d at 682 ("Because Ramsey Steel's hiring criterion was entirely subjective, Medina's claims could not be defeated on summary judgment at the prima facie case stage."); *Lindsey*, 987 F.2d at 327 ("Subjective criteria should not be considered a part of the *prima facie* evaluation in a summary judgment proceeding."). Here, the Court has determined that a prima facie case of employment discrimination exists for purposes of summary judgment.  Further, the subjective criteria at issue in *Medina* (whether an individual had "substantial sales experience")[9] and *Lindsey* (whether a dancer was "beautiful, gorgeous, and sophisticated")[10] are distinctly different from the "work performance issues" raised by the Defendants regarding the teaching aspects of Dr. Gerald's employment.  *Maestas*, 2013 WL 5385478, at *5; *see also Ivy*, 799 F. Supp. 2d at 701; *Escobar*, 562 F. Supp. 2d at 811.  Dr. Gerald's argument also overlooks the Fifth Circuit's clear statement "that '[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection.'"  *Churchill v. Tex. Dep't of Criminal Justice*, 2013 WL 4406706, at *3 (5th Cir. Aug. 19, 2013) (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007)).  "'A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific

---

[9] 238 F.3d at 681.

[10] 987 F.2d at 327.

factual basis upon which it based its subjective opinion.'"  *Alvarado*, 492 F.3d at 616-17

(quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000)).  The

documents reflecting Dr. Gerald's pre-tenure review contain sufficiently clear and

specific bases upon which the determination was made against her continued

employment.[11]

     Next, the Court considers Dr. Gerald's disparate treatment argument that "the

Fifth Circuit holds that summary judgment should not be allowed if Plaintiff is clearly

more qualified than Dr. Rushing."  (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35]

at p. 10) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343 (5th Cir. 2001);

*Walther v. Lone Star Gas Co.*, 952 F.2d 119 (5th Cir. 1992)).  Dr. Gerald's reliance on

*Celestine* and *Walther* in support of the denial of summary judgment is highly

questionable.  In *Celestine*, the Fifth Circuit *affirmed* the district court's grant of

---

[11] For example, the NFS Committee found as follows:  "While Dr. Gerald's student evaluation ratings (combined for all 18 questions over her time at Southern Miss) are slightly above the minimum required (3.8 versus 3.5/5), they are not consistent with the department mean of 4.33  Student comments beginning with fall 2007 semester indicate Dr. Gerald exhibits poor communication with the students related to course expectations, content and grading, inconsistent grading with inadequate feedback, and disorganization.  These comments are reflected in the individual scores for items related to presentation of subject matter in clear and organized manner (average score 3.23), overall rating of the instructor (average score 3.53) and effectiveness of instructor in stimulating interest of the student (3.35).  The committee's review of course syllabi revealed unclear assignments, and minimal updating to address issues raised by students since her appointment at Southern Miss and as directed by the department chair in her 2007 and 2008 annual evaluations.  Accreditation standards established by the Commission on Accreditation for Dietetics Education requires program monitoring, evaluation and revision based on feedback from program constituents including students.  The lack of responsiveness to student concerns related to course delivery will be noted by re-accreditation site visitors during our fall 2011 site visit.  Furthermore, there is a lack of clear distinction between 400/500, and 400/600 level courses with regard to content and separate research projects for graduate courses, as required by SACS."  (Doc. No. [26-10] at pp. 1-2.)

summary judgment, and the relevant issue was whether the plaintiffs were better qualified than the employees promoted or trained in their stead.  266 F.3d at 356-57. Here, Dr. Rushing was not promoted over Dr. Gerald since his pre-tenure review took place approximately two (2) years before Gerald's review.  Further, Dr. Rushing was no longer teaching in the NSF department at the time of Dr. Gerald's review in 2011.  (*See* Rushing Dep. [26-25] 4:17-5:3.)  *Walther* involved an appeal from a jury verdict in favor of a plaintiff alleging age discrimination.  952 F.2d at 121.  The Fifth Circuit found significant the fact that the plaintiff's immediate supervisor conceded "he was more qualified than some of the younger employees who were retained and promoted."  *Id.* at 123.  No similar concession from Dr. Yadrick, Dr. Gerald's former supervisor, as to the qualifications of Dr. Gerald versus Dr. Rushing has been brought to the Court's attention.

In any event, the Court evaluates whether Dr. Gerald has presented evidence showing that she "was 'clearly better qualified' than" Dr. Rushing.  *Celestine*, 266 F.3d at 357 (citations omitted).  Dr. Gerald must adduce facts "from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Moss*, 610 F.3d at 923 (quoting *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).  "[T]he bar is set high for this kind of evidence" since "differences in qualifications are generally not probative evidence of discrimination".  *Id.* (citing *Celestine*, 266 F.3d at 357).  Dr. Gerald has failed to meet this high bar.

Dr. Gerald cites to Dr. Rushing testifying at deposition that her "credentials were beyond" his and that the two of them were not comparable because Dr. Gerald had

obtained tenure at LTU prior to joining the faculty at USM.  (*See* Rushing Dep. [26-25]

12:12-22, 42:24-43:22.)  Dr. Rushing had not "taken any time to sit down and look at . . .

[Dr. Gerald's] curriculum vitae, but . . . [he] assume[d] that she was a good bit past" him

because she was tenured at LTU.  (Rushing Dep. [26-25] 12:12-22.)  No other evidence

is offered in support of Dr. Gerald's position that she was clearly more qualified than Dr.

Rushing.  "[A]n attempt to equate years served with superior qualifications . . . [is]

unpersuasive.  Obviously, work experience is one component of defining who is more

qualified, but greater experience alone will not suffice to raise a fact question as to

whether one person is clearly more qualified than another."  *Moss*, 610 F.3d at 923

(internal quotation marks and citation omitted).  Thus, Dr. Rushing's generalized belief

that Dr. Gerald's credentials were greater than his because she had previously obtained

tenure at LTU, in and of itself, fails to create a jury issue.

Also relevant here is Dr. Yadrick's consideration of Dr. Gerald's prior experience

in her pre-tenure review.  Dr. Yadrick provided:

> We hired Dr. Gerald, at the associate professor level, because of her
> expertise and experience in teaching foodservice management courses in a
> dietetics curriculum and her experience with guiding graduate students in
> foodservice management research, and based on evidence of her prior
> research productivity.  We saw a role for her in our small department of
> providing leadership for foodservice management curricula in undergraduate
> and graduate programs, as well as for our online certificate program in
> Management of Child Nutrition . . . Programs.  For the period of employment
> that we are assessing within this pre-tenure review, I have been disappointed
> that these expectations have not come to fruition, and that instead Dr.
> Gerald's teaching approach has seemed to compromise the learning of the
> students in our accredited Didactic Program in Dietetics.

(Doc. No. [26-11] at p. 4.)  It is not unreasonable for an employer to expect greater

things from a more experienced employee.  Further, Dr. Rushing's pre-tenure review

materials before the Court evidence no negative comments regarding teaching,[12] such as those documented in Dr. Gerald's materials.  Based on this record, the Court determines that Dr. Gerald has failed to present evidence from which a jury could find "that 'no reasonable person, in the exercise of impartial judgment, could have'" given Dr. Rushing a positive third-year review and Dr. Gerald a negative one.  *Moss*, 610 F.3d at 923.

Dr. Gerald also makes several assertions to the effect that she should have been afforded a positive pre-tenure review, such as, she was excellent in 75 percent of the criteria pertaining to the review (service and research); she was adequate in all three areas pertaining to the review (service, research, and teaching); she achieved satisfactory teaching evaluations in 2007 and 2008; and, the Defendants improperly relied on anonymous student evaluations in judging her teaching.  None of these allegations actually demonstrate pretext, i.e., that Dr. Gerald's teaching performance issues (specified in the documents reflecting her third-year pre-tenure review)[13] were "'not the real reason for the adverse employment action.'"  *Churchill*, 2013 WL 4406706, at *2 (quoting *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)); *see also LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext.") (citation omitted).  It does appear that most, if not all, of the negative aspects

---

[12] (*See* Doc. No. [38-1].)  To the contrary, "[h]is students recognize him as the most effective communicator from among the three instructors."  (Doc. No. [38-1 at ECF p. 2].)

[13] (*See* Doc. Nos. [26-10], [26-11], [26-12].)

of Dr. Gerald's review arose from student complaints or evaluations.  However, there is

no prohibition against a university employer relying on such data in the Fifth Circuit.[14]

Dr. Gerald's disagreement with any negative student evaluations and the outcome of

her pre-tenure review fails to give rise to a genuine issue of *material* fact, and does not

require the Court to assume the role of USM's personnel manager.[15]

As to the issue of mixed-motive, Dr. Gerald has failed to present any direct or

circumstantial evidence of her gender being a motivating factor in the subject

employment decision.  In fact, there is circumstantial evidence to the contrary.  Six out

of the twelve individuals determining Dr. Gerald's pre-tenure review (Dr. Yadrick, Dr.

Brown, Dr. Connell, Dr. Molaison, Dr. Harbaugh, and Dr. Lux) are women.  All twelve

---

[14] *See Murungi v. Xavier Univ. of La.*, 313 Fed. Appx. 686, 690 (5th Cir. 2005) ("Xavier has articulated legitimate, non-discriminatory reasons for not promoting Murungi and for not renewing his contract, including his longstanding history of poor student evaluations, his students' recurrent complaints about his teaching, and his unprofessional response to the Ochsner complaint."); *Escobar*, 562 F. Supp. 2d at 811 (viewing the professor's poor teaching evaluations as a legitimate, nondiscriminatory reason for her termination); *Rubinstein v. Administrators of Tulane*, 58 F. Supp. 2d 702, 715-16 (E.D. La. 1998) (finding the plaintiff's pretext contention that student evaluations used in measuring his teaching performance were selectively employed and miscalculated to be insufficient), *aff'd in part*, 218 F.3d 392 (5th Cir. 2000).

[15] *See Murungi*, 313 Fed. Appx. at 690 ("Although Murungi may not believe his student evaluation scores warrant non-renewal of his contract, employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of employment decisions nor . . . to transform the courts into personnel managers.") (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995)); *Patrick v. Principi*, 275 F.3d 44, 2001 WL 1223858, at *4 (5th Cir. Oct. 5, 2001) (finding that the plaintiff's disagreement with her employer's evaluation of her qualifications failed to establish a case of unlawful discrimination) (citing *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 408 (5th Cir. 1999)); *Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 647 (E.D. Tex. 2007) ("[A]n employee cannot survive summary judgment merely because she disagrees with the employer's assessment of her performance . . . .") (citations omitted), *aff'd*, 273 Fed. Appx. 391 (5th Cir. 2008).

individuals recommended against Dr. Gerald's continued employment.  Dr. Rushing, whom the Defendants supposedly preferred over Dr. Gerald because of his gender, received a negative fourth-year review that led to his resignation from the NFS faculty. (Rushing Dep. [26-25] 18:3-20:12, 22:9-23:21.)  These circumstances are relevant where "the ultimate question [is] discrimination *vel non*".  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (citation omitted).  Ultimately, no reasonable jury could conclude that Dr. Gerald's gender was a motivating factor in her negative pre-tenure review and USM's resulting determination not to renew her employment beyond 2012.  Therefore, summary judgment is due in favor of the Individual Defendants on Dr. Gerald's disparate treatment gender discrimination claim asserted under § 1983.

**b.     Due Process**

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.  There can be no deprivation of substantive or procedural due process in the absence of a protected property right or liberty interest.  *See, e.g.*, *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997); *DePree v. Saunders*, No. 2:07cv185, 2008 WL 4457796, at *7 (S.D. Miss. Sept. 30, 2008), *aff'd*, 588 F.3d 282 (5th Cir. 2009); *Suddith*, 977 So. 2d at 1170 (¶ 19).  "Constitutionally protected property interests are created and defined by understandings that 'stem from an independent source such as state law . . . .'"  *DePree*, 588 F.3d at 289 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).  Liberty interests may arise from state law or the Due Process Clause itself.  *See Rhodes v. Thaler*, 713

F.3d 264, 266 n.9 (5th Cir. 2013) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).

Dr. Gerald's due process claims are amorphous to say the least.  In carefully reviewing and construing Dr. Gerald's Complaint and her summary judgment briefing, the Court finds that Dr. Gerald is seeking relief under the Due Process Clause pursuant to the following allegations:  (1) she was denied procedural due process when the Defendants failed to protect her from discrimination and accommodate her disability in accordance with USM's Faculty Handbook; (2) she was denied substantive due process with respect to her pre-tenure review because the Defendants' failure to factor her disability into the review process was arbitrary and capricious, and she actually satisfied any reasonable criteria regarding the review; and (3) her liberty interests were violated because her entire career was taken from her at USM.  The Defendants argue that none of Dr. Gerald's due process claims survive summary judgment.  The Court agrees.

Most of the preceding allegations are, at bottom, disability discrimination claims. Dr. Gerald cannot assert these claims against the Individual Defendants through the back door of § 1983.  *See Lollar*, 196 F.3d at 608-10; *D.A. ex rel. Latasha A.*, 629 F.3d at 456-57; *Pena*, 726 F. Supp. 2d at 689-90.

The Fifth Circuit has recognized that "Mississippi courts have held that employee manuals become part of the employment contract, creating contract rights to which employers may be held, such as Dr. Whiting's right to the procedures outlined in the handbooks."  *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006) (citing *Robinson v. Bd. of Trs. of E. Cent. Junior Coll.*, 477 So. 2d 1352, 1353 (Miss. 1985); *Bobbitt v. The Orchard Dev. Co.*, 603 So. 2d 356, 361 (Miss. 1992)).  However, "[it]

-46-

matters what the handbook actually says" under Mississippi law. *Suddith*, 977 So. 2d at 1171-72 (¶ 25). The Mississippi Supreme Court has consistently held that employee handbooks expressly disclaiming the existence of a contract fail to give rise to contractual obligations between employers and employees.[16] "Where there is something in the employee handbook disclaiming a contract of employment, the rule developed in *Bobbitt* does not apply." *Lee*, 797 So. 2d at 848 (¶ 11) (citation and internal quotation marks omitted). USM's Employee Handbook [26-22] and Faculty Handbook [26-23] both contain disclaimers advising that the handbook provisions do not give rise to contractual rights.[17] Therefore, any Defendant's alleged failure to comply with the Faculty Handbook [26-23] or Employee Handbook [26-22] does not amount to a breach of contract and a resulting deprivation of a protected property interest.

It is also clear under Mississippi law "that neither state legislation nor state regulations create a legitimate expectation of continued employment for a non-tenured faculty member". *Whiting*, 451 F.3d at 344 (citations omitted); *see also Suddith*, 977 So. 2d at 1170 (¶ 20) ("[T]he Mississippi Supreme Court has clearly stated that non-

---

[16] *See, e.g., Byrd v. Imperial Palace of Miss.*, 807 So. 2d 433, 437-38 (¶¶ 17-18) (Miss. 2001); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 848 (¶¶ 7-12) (Miss. 2001); *Hartle v. Packard Elec., a Div. of Gen. Motors Corp.*, 626 So. 2d 106, 109-10 (Miss. 1993).

[17] "Although the *Faculty Handbook* is not a comprehensive, self-contained policy document, *nor is it a contract of employment*, it does provide guidance for the relationships between the University and the faculty." (Faculty Handbook [26-23 at ECF p. 1]) (second emphasis added). "These policies are intended only to be guidelines for employment at USM, and they do not give rise to any contractual rights." (Employee Handbook [26-22 at ECF p. 2].)

tenured faculty, whether they be tenure-track or non-tenure track, do not have a protected property interest in continued employment either by legislation or regulations.") (citations omitted).  Dr. Gerald's last effective employment contract expired on May 19, 2011.  (*See* Doc. No. [26-7 at ECF p. 1].)  Because Dr. Gerald was non-tenured, she had no legitimate expectation of continued employment beyond this date.  It thus follows that Dr. Gerald was "not entitled to substantive protection . . . [from] arbitrary . . . government[al] action" in connection with her pre-tenure review, which resulted in USM's decision not to renew her employment beyond 2012.  *Hall v. Bd. of Trs. of State Insts. of Higher Learning*, 712 So. 2d 312, 320 (¶ 31) (Miss. 1998).

The freedom to work and earn a living falls within the scope of the liberty interests protected by the Due Process Clause.  *See Roth*, 408 U.S. at 572.  Thus, the right to procedural due process is implicated when a governmental "employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities."  *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (citation and internal quotation marks omitted).  A claimant must show the following in order to recover for the deprivation of a liberty interest on this basis:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Bellard*, 675 F.3d at 461-62.  Dr. Gerald makes no effort to meet these elements in opposition to summary judgment.  Instead, conclusory and sweeping arguments of

-48-

counsel are presented, such as, Dr. Gerald "had her entire career taken from her at the University level." (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at pp. 19-20.) It is well established that arguments of counsel and unsworn allegations in the pleadings fail to preclude summary judgment. *See, e.g.*, *Nettles v. Travelers Prop. Cas. Ins. Co.*, 375 F. Supp. 2d 489, 492 (S.D. Miss. 2005); *Roberts v. Walthall County Gen. Hosp.*, 96 F. Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000). Accordingly, Dr. Gerald's deprivation of liberty claim under § 1983 will be dismissed as well.

### c.   First Amendment

Dr. Gerald's Complaint asserts that she was retaliated against in violation of the First Amendment for expressing her views "regarding the educational approaches utilized by the Defendants." (Compl. [26-1] at ¶ 59.) To prove a First Amendment retaliation claim via § 1983, a plaintiff must show "that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Gibson v. Kilpatrick*, 734 F.3d 395, 400 (5th Cir. 2013) (citing *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011)). Dr. Gerald has failed to offer arguments or evidence on each of these elements in opposition to summary judgment. Therefore, this claim has been abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that the plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

Dr. Gerald has failed to evince issues for trial as to any Individual Defendant's alleged violation of her constitutional rights.  Thus, the Court need not consider the objective reasonableness of the Individual Defendants' actions (the second prong of the qualified immunity analysis), and summary judgment will be granted in favor of these Defendants in their individual capacities on Dr. Gerald's § 1983 claims.

### 4.    Injunctive Relief

Dr. Gerald seeks two forms of injunctive relief:  (1) reinstatement and (2) to "be provided the benefits of the accommodations she has needed and needs in the future." (Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 16.)  The Supreme Court has provided that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  *Will*, 491 U.S. at 71 n.10.  However, the Court has not found any cognizable violation of Dr. Gerald's constitutional rights under § 1983.  As a result, neither monetary nor injunctive relief is available to Dr. Gerald under this statute.  *Cf. Dooley v. Fort Worth Indep. Sch. Dist.*, 686 F. Supp. 1194, 1200 (N.D. Tex. 1987) ("Absent a violation of constitutional rights, section 1983 provides no independent basis for recovery or injunctive relief."), *aff'd*, 866 F.2d 1418 (5th Cir. 1989).

Whether or not injunctive relief is available with respect to Dr. Gerald's federal claims surviving summary judgment–her claims against USM for unequal pay under Title VII and for failure to provide accommodations under the Rehabilitation Act–has not been adequately briefed by either side.  The Defendants essentially argue that Dr. Gerald is not entitled to any injunctive relief on her claims of gender and disability

discrimination because she lacks sufficient evidence to proceed on these claims.  Dr.

Gerald's arguments regarding injunctive relief focus on the Supreme Court's decision in

*Will*, 491 U.S. 58, which only concerned claims brought under § 1983.  The Court thus

determines that Dr. Gerald's request for injunctive relief associated with her federal

claims asserted outside the confines of § 1983 and surviving summary judgment will

also proceed to trial.  *Cf. Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550, 110 S. Ct.

1331, 108 L. Ed. 2d 504 (1990) (providing that when legal and equitable claims share

common facts, the legal claims should ordinarily be tried first) (citations omitted).

Nonetheless, any party may, if it so chooses, submit a memorandum brief limited to ten

(10) pages in length on or before February 3, 2014, addressing the availability *vel non*

of injunctive relief as to Dr. Gerald's remaining federal claims.

### C.     State Law Claims

The Defendants seek the dismissal of each of Dr. Gerald's state law claims, *viz.*,

intentional infliction of emotional distress, negligent infliction of emotional distress,

breach of implied contract, constructive discharge, outrage, negligence, menace,

promissory estoppel, equitable estoppel, detrimental reliance, and breach of express

contract.  No analysis is required as to Dr. Gerald's claims for negligent infliction of

emotional distress, breach of implied contract, constructive discharge, outrage, and

menace.  The Court determines that these allegations have been abandoned through

the absence of any meaningful opposition in Dr. Gerald's summary judgment response.

*See Black*, 461 F.3d at 588 n.1; *Cinel*, 15 F.3d at 1345.

### 1.     Breach of Express Contract

The Defendants assert that Dr. Gerald received all the benefits and compensation due under her final written employment contract expiring on May 19, 2011.  Dr. Gerald does not dispute this contention.  (*See* Gerald Dep. [26-2] 208:3-209:6.)  Instead, Dr. Gerald argues a breach of her contractual right not to be discriminated against on the basis of disability or gender arising from USM's Faculty Handbook.  As discussed above, the Faculty Handbook [26-23] contains a disclaimer advising that the handbook provisions do not give rise to contractual rights.  Mississippi law is clear that reliance on an employment manual containing a valid disclaimer in support of a breach of contract claim is misplaced.  *See, e.g.*, *Byrd*, 807 So. 2d at 437–38 (¶¶ 17–18); *Lee*, 797 So. 2d at 848 (¶¶ 7–12); *Hartle*, 626 So. 2d at 109–10.  Thus, there is no genuine issue of material fact as to any alleged breach of contract and summary judgment against Dr. Gerald is due on this cause of action.

### 2.    Promissory Estoppel, Equitable Estoppel, and Detrimental Reliance

Central to each of these allegations is Dr. Gerald's contention that she left her tenured position at LTU because representations were made to her to the effect that she would not be discriminated against and she would have a fair opportunity to achieve tenure at USM.  (*See* Compl. [26-1] at ¶ 65; Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 31.)  Although not entirely clear, it appears that Dr. Gerald points to USM's Faculty Handbook [26-23] as the source of these representations.  (*See* Compl. [26-1] at ¶ 65; Pl.'s Mem. Brief in Supp. of Resp. to Mot. for SJ [35] at p. 20.)  Yet, Dr. Gerald testified at deposition that she had no recollection of reviewing the Faculty Handbook or speaking with anyone at USM about the contents of the Handbook prior to

agreeing to join USM's faculty.  (*See* Gerald Dep. [26-2] 34:19-35:9.)  Dr. Gerald further testified that she had no recollection of speaking with anyone at USM about the requirements for obtaining tenure prior to agreeing to join USM's faculty.  (*See* Gerald Dep. [26-2] 35:10-14.)  Dr. Gerald's sworn testimony prevails over any averments in the Complaint or arguments of her counsel.  *See Fife v. Vicksburg Healthcare, LLC*, 945 F. Supp. 2d 721, 732 (S.D. Miss. 2013) (citations omitted).  Dr. Gerald has also failed to present any evidence in opposition to summary judgment of any Individual Defendant making any representation to her underlying the subject claims.  Consequently, summary judgment will be granted in favor of the Defendants on Dr. Gerald's estoppel and detrimental reliance claims due to her failure to adduce evidence of any actionable representations and resulting reliance.  *See Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 67 (¶ 52) (Miss. Ct. App. 2011) (discussing the elements of promissory and equitable estoppel, and providing that detrimental reliance is an element of both claims).

### 3.    Intentional Infliction of Emotional Distress

The Defendants contend that USM is immune from this claim under the Mississippi Tort Claims Act ("MTCA"), and that Dr. Gerald lacks sufficient evidence to proceed on the claim against the Individual Defendants.  The "MTCA provides the exclusive civil remedy for tort actions against the state, its political subdivisions, and its employees."  *City of Jackson v. Harris*, 44 So. 3d 927, 932 (¶ 23) (Miss. 2010) (citing Miss. Code Ann. § 11–46–7(1)).  Governmental employees, such as the Individual Defendants, may be sued in their official capacity under the MTCA, "but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."  Miss. Code Ann. § 11–46–7(2).  A governmental

-53-

employee shall not be considered to have acted "within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." *Id.* "The Mississippi Supreme Court has held that torts which require proof of malice as an essential element are excluded from the MTCA . . . ." *Weible*, 89 So. 3d at 64 (¶ 40) (considering the plaintiff's intentional infliction of emotional distress claim to fall outside the scope of the MTCA, and citing *Zumwalt v. Jones County Board of Supervisors*, 19 So. 3d 672, 688–89 (¶¶ 83–84, 86) (Miss. 2009), which found that the MTCA did not apply to a claim for tortious interference with business relations).  Dr. Gerald's intentional infliction of emotional distress claim includes an allegation of malice,[18] and such a claim may be predicated on behavior that "is *malicious*, intentional, willful, wanton, grossly careless, indifferent or reckless." *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 290 (¶ 20) (Miss. 2007) (emphasis added; citation omitted).  Therefore, USM is immune from this intentional tort under the MTCA.  *See* Miss. Code Ann. § 11-46-7(2).

As to the Individual Defendants, Dr. Gerald must show their "conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (¶ 23) (Miss. Ct. App. 2004) (citation omitted).  Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities.  *Jones v. Mullen*, 100 So. 3d 490,

---

[18] (*See* Compl. [26-1] at ¶ 70.)

499 (¶ 40) (Miss. Ct. App. 2012) (citing *Clark v. Luvel Dairy Prods., Inc.*, 821 So. 2d 827, 831 (¶ 9) (Miss. Ct. App. 2001)).  The claimant must prove that the defendant intentionally and maliciously sought to do him harm.  *Sumler v. East Ford, Inc.*, 915 So. 2d 1081, 1089 (¶ 26) (Miss. Ct. App. 2005) (citing *Morgan v. Greenwaldt*, 786 So. 2d 1037 (¶ 24) (Miss. 2001)).  Furthermore, employment disputes will not ordinarily support an emotional distress claim.  *Lee*, 797 So. 2d at 851 (¶ 24) (citations omitted).  "Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress."  *Brown v. Inter–City Fed. Bank for Savings*, 738 So. 2d 262, 265 (¶ 9) (Miss. Ct. App. 1999) (quoting *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir.1994)).  Viewing the facts and resulting inferences in Dr. Gerald's favor, while giving her conclusory and unsubstantiated assertions the limited weight they are due,[19] the Court determines that no reasonable jury could find that any Individual Defendant engaged in conduct so outrageous and extreme in character as to be intolerable in a civilized society.  The circumstances of this ordinary employment dispute necessitate the dismissal of Dr. Gerald's intentional infliction of emotional distress claim against the Individual Defendants.

### 4.    Negligence

---

[19] *See Oliver*, 276 F.3d at 744 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

The Individual Defendants are immune from Dr. Gerald's negligence claim under the MTCA since no showing has been made of any acts or omissions occurring outside the scope of their governmental employment.  *See* Miss. Code Ann. § 11-46-7(2).  USM is arguably immune from this allegation under the MTCA's discretionary function immunity provision,[20] because "[a]n employment decision is a classic discretionary function";[21] and, the allegation is clearly barred by the exclusivity provision of the Mississippi Workers' Compensation Act (the "Act").  *See* Miss. Code Ann. § 71-3-9.  The Mississippi Supreme Court has long held that the Act's exclusivity provision covers claims made by an injured employee against his employer or any co-employee causing injury.  *See, e.g.*, *Christian v. McDonald*, 907 So. 2d 286, 290 (¶ 20) (Miss. 2005); *Sawyer v. Head*, 510 So. 2d 472, 476–77 (Miss. 1987); *Brown v. Estess*, 374 So. 2d 241, 242 (Miss. 1979).  Dr. Gerald may not proceed on her "negligence" claim outside the confines of the Act and inside this Court "[a]s a matter of Mississippi law".  *Tisdale v. New Palace Casino*, No. 1:11cv166, 2011 WL 5833695, at *3 (S.D. Miss. Nov. 17, 2011) (citations omitted).

## CONCLUSION

For the foregoing reasons:

---

[20] "A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused".  Miss. Code Ann. § 11-46-9(1)(d).

[21] *Nichols*, 669 F. Supp. 2d at 700 (citations omitted).

IT IS ORDERED AND ADJUDGED that the Defendants' Motion to Strike [39] is granted in part and denied in part, as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment [26] is granted in part and denied in part.  The following of Plaintiff's claims are dismissed with prejudice: (i) ADA claims against all Defendants; (ii) Rehabilitation Act claims against the Individual Defendants; (iii) Rehabilitation Act disparate treatment claim against USM; (iv) Title VII claims against the Individual Defendants; (v) Title VII claims against USM arising out of Plaintiff's pre-tenure review; (vi) 42 U.S.C. § 1983 claims against all Defendants; and (vii) all state law causes of action.  Plaintiff's remaining claims against USM for failure to provide accommodations under the Rehabilitation Act and for unequal pay under Title VII will proceed to trial.

SO ORDERED AND ADJUDGED this the 15th day of January, 2014.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE